IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| THELMA LOUISE CHAPMAN, | ) Civil Action No. 4:07-02868-TLW-TER |
| Plaintiff, | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| Defendant. | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

Plaintiff, Thelma Chapman, filed an application for DIB on September 18, 2003, with an alleged onset of disability of November 10, 2002. (Tr. 66). Plaintiff requested a hearing before an administrative law judge (ALJ) after her claim was denied initially and on reconsideration. (Tr. 36, 37).

On August 22, 2006, the ALJ issued a decision finding that plaintiff was not disabled because she was "capable of making a successful adjustment to other work that exists in significant numbers

1

in the national economy." (Tr. 23). After the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. Section 405(g). See 20 C.F.R. § 404.981.[1] Plaintiff filed the instant action on August 18, 2007.

## II. FACTUAL BACKGROUND

As of her alleged onset of disability, plaintiff was forty-three years of age. (Tr. 22). The ALJ found that she has at least a high school education and past relevant work as a certified nursing assistant, cottage parent, and substitute teacher. (Id.). Plaintiff initially alleged disability due to degenerative disc disease, lumbar insufficiency problems and depression. (Tr. 76).

## III. DISABILITY ANALYSIS

In her brief before the Court, plaintiff argues that the Commissioner's findings are in error because there was no:

1. discussion of her treating physician's opinions;

2. evaluation of the consultative psychiatric expert's opinion;

3. proper determination of her mental residual functional capacity ("RFC");

4. consideration of the effect of obesity on her impairments.

In addition, plaintiff complains that the ALJ erred in his assessment of her credibility, and the Appeals Council committed reversible error in failing to explain its consideration of her "new"

---

[1] All of this Court's references to the Code of Federal Regulations (C.F.R.) are to the 2006 edition.

evidence. The Commissioner contends otherwise and urges that substantial evidence supports the determination that plaintiff was not disabled.

In his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since November 10, 2002, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).

3. The claimant has the following severe impairments: lumbar disc disease and a history of multiple surgeries, degenerative joint disease in both knees, a history of right knee replacement, obesity, and dysthymia (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work with restrictions that require no standing and/or walking over two hours in an 8-hour workday; no more than occasional stooping, crouching, twisting or climbing of ramps or stairs; no balancing, kneeling, crawling or climbing of ladders, ropes or scaffolds; and the avoidance of hazards such as unprotected heights and dangerous machinery. She can perform simple, routine work in a low stress environment (which I define as requiring few decisions), with no ongoing interaction with the public or coworkers.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 23, 1959, and was 43 years old on the alleged disability onset date, which is defined as a younger individual (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English.

9. Because of the claimant's young age, transferability of job skills is not material to the determination of disability (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from November 10, 2002, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-18; 22-23).

Under the Social Security Act (the Act), 42 U.S.C. § 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R. § 404.1520. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. Part 404, Subpart P,

Appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent him from any substantial gainful employment. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. Section 423(d)(5), the plaintiff has the burden of proving disability, which is defined by Section 423(d)(1)(A) as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

## IV. ARGUMENTS

A. Physicians' Opinions

After suffering from "chronic and incapacitating back pain, [and] failing to improve with extensive efforts at medical management" (Tr. 152), in April 2003 plaintiff underwent a lumbar decompression instrumented fusion, her third spinal surgery (see Tr. 158). By the middle of August, plaintiff's pain had "not changed much" despite physical therapy (Tr. 427), and her care was transferred to Dr. Kevin Kopera of the Center for Health and Occupational Services (see Tr. 158).

Just prior to her first visit with Dr. Kopera in September 2003, plaintiff reported ongoing low back pain and right leg pain, which increased with any type of activity. (Tr. 421-22). Sitting increased her pain and led to headaches, she was unable to lift "a lot," and walking up to one-half

5

mile was problematic. (Tr. 421). Plaintiff utilized both a back brace and a straight cane. Her physical therapist opined that she was limited due to pain and decreased strength and endurance. (Tr. 420). The therapist determined that plaintiff had plateaued, recommended that plaintiff continue to use her cane (Tr. 423), and discharged plaintiff due to "lack of progress" (Tr. 420).

After Dr. Kopera examined plaintiff, he decided that additional surgery was not an option and plaintiff had received the maximum benefit from physical therapy. (Tr.308-09). The doctor prescribed Neurontin (an anti-epileptic medication useful in the treatment of neuropathic pain) and Lortab (containing an opioid analgesic, is indicated for the relief of moderate to moderately severe pain). (Tr. 309).

When Dr. Kopera saw plaintiff the next month, she was working up to six hours per day and was tolerating her medication regimen well. (Tr. 307). Plaintiff described no new symptoms and the doctor found no significant change in her exam or symptoms. He found her condition to be "stable," although he did make an adjustment to her Lortab prescription.

Plaintiff returned in November, but was "struggling" with her low back pain. (Tr. 306). Although at times she was able to work up to seven hours, at other times she "struggled greatly." (Id.) Plaintiff was discouraged that she was not improving as well as she had hoped. Dr. Kopera responded with an increase in her Neurontin prescription, and set plaintiff's work restrictions at a maximum lift/push/pull of five pounds, "doing primarily sit down work," but for only five hours per day, "advancing as tolerated." (Id.).

When Plaintiff saw Dr. Kopera the next month, she was still complaining of low back pain. (See Tr. 305). Although her symptoms had not changed significantly, at time her pain was "quite noticeable." (Id.). Dr. Kopera found that plaintiff was stable at the higher medication dosages, and

6

he opined that she had reached maximum medical improvement and would be able to work full-time with her current restrictions. But when plaintiff came for her next visit in January 2004, she was not working as her employer could not accommodate these restrictions. (See Tr. 304). At this time, the doctor raised her lifting limit from five to ten pounds.

Plaintiff continued to be stable at her May 2004 appointment, but asked that her Lortab dosage be increased, which Dr. Kopera did. (Tr. 303). However, when she returned in August, her symptoms had increased, and she reported being "quite limited by her symptoms." (Tr. 302). On examination, plaintiff experienced discomfort with palpation and had difficulty with bending and extending. The doctor found her "to have a poor overall level of physical fitness with morbid obesity." (Id.). He observed that plaintiff benefitted from, and tolerated well, her current medication regimen, but added Flexeril for muscle spasms.

By the time plaintiff saw Dr. Kopera in November 2004, he characterized her lumbar fusion as "failed." (Tr. 301). Although she continued with her medication regimen, at times plaintiff did not sleep well. Flexeril did not help plaintiff's symptoms, and they remained as reported in August. Dr. Kopera noted that plaintiff ambulated slowly with an antalgic gait and had very limited flexibility at her waist. At this time, the doctor changed his assessment of plaintiff's abilities, stating that she "is doing as best she can be she at this point *is permanently disabled.*" (Id. (emphasis added)).

Although the regulations require that all medical opinions in a case be considered, 20 C.F.R. § 404.1527(b), treating physician opinions are accorded special status, see 20 C.F.R. § 404.1527(d)(2). "Courts typically 'accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.'" Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson, 434

7

F.3d at 654 (internal citation omitted)). The rule, however, does not mandate that her opinion be given controlling weight. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). "It is error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Social Security Ruling (SSR) 96-2p, 61 Fed. Reg. 34490-01, 34491. See also 20 C.F.R. § 404.1527. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). See also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."). Further, although a treating physician may offer an opinion as to a claimant's RFC, the final responsibility for deciding this issue is reserved to the Commissioner, and no special significance will be given to the source of such opinion. 20 C.F.R. § 404.1527(e)(2),(3).

The ALJ addressed both of Dr. Kopera's opinions, explaining:

> Dr. Kopera, reported only that the claimant ambulated slowly with an antalgic gait pattern and was very limited in her flexibility. He noted that her symptoms were similar to those reported in the past and that physical examination was unchanged. Seemingly, Dr. Kopera determined that because the claimant did not return to work, she was disabled. He expressly stated that there had been no change in the claimant's symptoms or examination, and I give very little weight to his statement of disability. I do, however, give considerable weight to the specific functional limitations he indicated against lifting more than 10 pounds and working from a primarily seated position.

(Tr. 19).

The above summarization of Dr. Kopera's treatment records show that the ALJ's reasoning is flawed. At her August 2004 appointment, plaintiff reported increased symptoms including muscle spasms and that she was "quite limited by her symptoms." (Tr. 302). The doctor included more detail in his examination findings, and does not say that they are unchanged from previous exams.

Also contrary to the ALJ's explanation, Dr. Kopera's records indicate that plaintiff had returned to work but had never been able to sustain full-time employment. Also, plaintiff explained to Dr. Kopera in January 2004 that she was no longer working, not because of her impairments, but because her employer could not accommodate her restrictions. Not until plaintiff's symptoms worsened did Dr. Kopera opine, in November 2004, that she could not work.

The regulations provide that the final responsibility for deciding disability is reserved to the Commissioner, but nevertheless require "that adjudicators must always carefully consider medical source opinions" on the issue. SSR 96-5p, 61 Fed. Reg. 34471-01, 34472. When faced with such an opinion, "the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." Id. This the ALJ failed to do. And although apparently not seen by the ALJ, plaintiff's primary care physician, Eric Cole, also opined that she was disabled, due to "severe functional disability."[2] (Tr. 453; see also Tr. 452).

"While it may be that the treating physician's opinion should ultimately be rejected when that opinion is properly examined, the ALJ must correctly probe the basis of the doctor's assessment

---

[2]Evidence considered by the Appeals Council and incorporated into the administrative record must be reviewed by the court in determining whether the Commissioner's final decision is supported by substantial evidence. Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

9

before spurning it." Gutzman v. Apfel, 109 F. Supp. 2d 1129, 1130 (D. Neb. 2000). The ALJ's failure to provide proper reasons for dismissing Dr. Kopera's opinion renders his rejection unsupported by substantial evidence.[3]

Plaintiff also complains of the ALJ's treatment of the opinion of Dr. Willie Moseley, who performed her psychiatric consultative examination. Plaintiff refers to several of Dr. Moseley's observations and contends that the ALJ failed to explain what weight he afforded them. As conceded by plaintiff, the ALJ did discuss Dr. Moseley's report. (See Tr. 20). The doctor, however, failed to offer any opinion as to the severity of plaintiff's mental impairment; what plaintiff could still do despite her mental impairment; or her mental restrictions. See 20 C.F.R. § 404.1527(a)(2) (defining a "medical opinion"). This task was instead performed by two state agency psychological consultants, "highly qualified . . . experts in Social Security disability evaluation" whose findings the ALJ must consider as opinion evidence. Id. § 404.1527(f)(2)(i).

In plaintiff's case, the state experts cited to both Dr. Moseley's report and plaintiff's medical records in determining that she suffered from no more than "moderate" limitations in the "B" criteria and had experienced no episodes of decompensation.[4] (Tr. 249, 251; 278-79). Based on this evaluation, the experts opined that plaintiff would not be able to carry out detailed instructions; would

---

[3]Had the ALJ properly followed the regulatory mandate, see 20 C.F.R. § 404.1527(d), (d)(5), he may have acknowledged Dr. Kopera's apparent expertise in occupational issues. (See, e.g., Tr. 158, 305).

[4]"We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3) (citing 20 C.F.R. Part 404, Subpt. P, App. 1 (pt. A), § 12.00C). When rating the degree of limitation in each functional area, only the last point on the scale (i.e., "Extreme" and "Four or More") represents a degree of limitation that is incompatible with the ability to do any gainful activity. Id. § 404.1520a(c)(4).

perform best in situations that did not require ongoing interaction with the public; and could perform simple, routine work activities without special supervision for at least two-hour periods. (Tr. 255, 283). Although the ALJ did not specifically discuss these opinions, he apparently accorded them substantial weight in that he limited plaintiff's mental RFC to the performance of simple, routine work with no ongoing interaction with the public or coworkers. See Bass v. McMahon, 499 F.3d 506, 510 (6th Cir. 2007) ("[F]ailure to explicitly state how much weight the ALJ was providing such observations is harmless ... because the ALJ's opinion is completely consistent with such observations.").

Plaintiff, however, focuses on the ALJ's failure to address the "GAF" rating which Dr. Moseley assigned to plaintiff. Global Assessment of Functioning ("GAF") "is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" Boyd v. Apfel, 239 F.3d 698, 700 n. 2 (5th Cir. 2001) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) [hereinafter DSM-IV]. The GAF Scale, ranging from zero to 100, is divided into ten ranges of functioning, e.g., 90 (absent or minimal symptoms) to 1 (persistent danger of severely hurting self or others, or unable to care for himself). The GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range.

The lower the GAF score, the more serious the symptoms. A score of 31-40, such as that assigned to plaintiff by Dr. Moseley, indicates that the individual has "[s]ome impairment in reality testing or communication ... OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood[.]" DSM-IV, supra, at 32. But "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."

11

Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). Further, the GAF score, standing alone, is of little significance to the factfinder, as there is no indication of whether it applies to symptom severity or level of functioning or impairment in reality testing or communication or major impairment in several areas and, if in several areas, which areas, and if these areas impact basic work activities. See 20 C.F.R. § 404.1521; see also "Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 Fed. Reg. 50746-01, 50764-765 (Aug. 21, 2000) (explaining that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"). Thus, the undersigned finds that plaintiff's GAF was simply another observation made by Dr. Moseley which was subsequently subsumed into the experts' psychological assessments.

B. Mental RFC

Plaintiff further challenges the ALJ's definition of a "low stress environment" as one "requiring few decisions." (Tr. 18, 22). But plaintiff fails to explain how she has been harmed by this finding. See, e.g., Brock v. Chater, 84 F.3d 726, 729 (5th Cir. 1996) (refusing to reverse the ALJ's decision "where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges"). The undersigned could find in the record no recommendation by any medical source that plaintiff should be restricted to a low stress environment. The only mental limitations specifically suggested were to "short and simple instructions" and no "on-going interaction with the public." (Tr. 255; see also Tr. 283). As plaintiff has provided no support for a low-stress requirement, the ALJ committed no reversible error in providing one that consisted of making few decisions.

C. Credibility

The ALJ determined that,

> Considering the claimant's activities, the effectiveness of right knee replacement, no indication in treatment notes of the need for replacement of the claimant's left knee with findings only of "early" degenerative changes, reports in treatment notes that the claimant tolerates pain medication without report of significant side-effects, the specific limitations indicated by Dr. Kopera which are consistent with formal functional capacities testing, and Dr. Kopera's opinion of permanent disability notwithstanding, I find that the claimant's allegations of disabling pain and limited functional [sic] are not credible.

(Tr. 21). Plaintiff complains that the ALJ failed to conduct a proper credibility analysis.

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the factfinder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but she must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

13

The ALJ found at step one that plaintiff had impairments capable of producing *some* of the symptoms which she alleged and, accordingly, proceeded to step two. As plaintiff points out, the ALJ referred to several factors which Ruling 96-7p lists for consideration in evaluating symptoms:

> [T]he use and effects of medications; precipitating and aggravating factors; duration and frequency of the symptoms; resultant functional restrictions; daily activities; treatment and other alternative measures, besides medications, for the relief of pain; the consistency between the level and frequency of treatment and the level of complaints; the extent to which prescribed treatment has been followed; the consistency of the claimant's allegations with prior statements made about the symptoms elsewhere in the record to other medical sources, to family, friends, agency personnel or other lay persons; and the consistency of the allegations with reports and observations by others concerning claimant's activities, behavior and efforts to work.

(Tr. 20-21).

Plaintiff argues that the ALJ refers to her "activities," yet does not identify any that he found to be inconsistent with her testimony. Indeed, plaintiff consistently placed her level of daily activity at doing some dishes, folding laundry, mending, picking up around the house, and alternating sitting with lying down. (E.g., Tr. 77, 115, 122, 414, 431, 480). Cf. Totten v. Califano, 624 F.2d 10, 11 (4th Cir. 1980) ("An individual does not have to be totally helpless or bedridden in order to be found disabled under the [Act.]"). Although she used to have an active social life, including church activities, she is now limited to visiting with her mother. (Tr. 115, 431, 479-80). Further, plaintiff's increase in activity level leads to more pain. (See Tr. 83, 413, 422, 428, 431). See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) ("The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.").

The ALJ failed to discuss plaintiff's repeated attempts at physical therapy, and ultimate referral to pain management, where she is treated with narcotic medications. (See Tr. 185, 308, 379, 429, 445-46). Cf. Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (the weakness of pain

14

medication is a factor to be considered in assessing the severity of a claimant's pain). At several points in the medical records, it is observed that plaintiff ambulates with a slow and/or antalgic gait, often needing the assistance of a cane or even a walker. (E.g., Tr. 301, 308, 424, 431, 445, 450). And from plaintiff's alleged disability onset through the date of her hearing, plaintiff rarely went more than two months without a caregiver appointment, sometimes having multiple visits during a month. Cf. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (the failure to seek help constitutes a reason for discounting subjective claims).

The ALJ cites to plaintiff's successful right knee surgery, but plaintiff continued to complain of left knee difficulties. (E.g., Tr. 380, 406, 443-44). The ALJ seems to dismiss these complaints because he finds no indication for left knee replacement, but plaintiff's primary physician wrote of "future plans to replace the [left] knee" (Tr. 453), and her orthopaedic surgeon mused, "[Plaintiff] knows she will eventually need knee *replacements*" (Tr. 387 (emphasis added)).

Finally, the ALJ relies on his weighting of Dr. Kopera's opinions. As the undersigned finds this determination to be flawed, it fails also to provide substantial support to the ALJ's credibility assessment. For the foregoing reasons, the undersigned finds that the ALJ's credibility finding is likewise unsupported by substantial evidence.

D. Obesity

Plaintiff next argues that the ALJ erred in not complying with Social Security Ruling 02-1p, 67 Fed. Reg. 57859-02, which requires a consideration of obesity at various points in the five-step analysis. Although the ALJ referred to plaintiff's obesity (see Tr. 18), and found it to be a "severe" impairment (Tr. 17), he failed to follow the Ruling's mandate to "*explain* how we reached our conclusions on whether obesity caused any physical or mental limitations." SSR 02-1p, 67 Fed. Reg.

15

at 57863. This duty, however, does not extend to speculation; rather, it is the claimant's burden to "furnish medical and other evidence that [the Commissioner] can use to reach conclusions about [the claimant's] medical impairment(s) and . . . its effect on [the claimant's] ability to work on a sustained basis." 20 C.F.R. 404.1512(a); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (claimant bears the burden of proof and production through step four of the sequential evaluation).

Plaintiff has failed to produce such evidence as to her obesity. Although her medical records contain many references to her body habitus (e.g., Tr. 301, 407, 421, 428, 437, 445), no caregiver ever suggested that plaintiff's weight adversely affected her impairments or her ability to function. Particularly, one would expect such effects to be evident through either an exacerbation or improvement as plaintiff's weight fluctuated within a fifty-pound range, as reflected in both her testimony (see Tr. 458-59) and her medical records (see Tr. 142, 171). Particularly, plaintiff's weight ballooned from 200 pounds at her first visit to Dr. Kopera (see Tr. 308), to 240 pounds just six months later (see Tr. 171), yet his records fail to indicate that plaintiff's obesity was a factor in his assessments. Only one caregiver directly addressed plaintiff's obesity, (perhaps ironically) suggesting that she should "watch her weight" after going from 195 pounds (Tr. 445), to 205 pounds some six weeks later (Tr. 443).

Ruling 02-1p notably makes clear that, it is not the mere presence of obesity which determines disability, but rather the effect that this impairment has on the ability of a claimant to function and perform work-related tasks. In this case, there is no evidence in the record to show that plaintiff's obesity affected her ability to perform such tasks or caused any of her symptoms. Thus, plaintiff has done no more than suggest that the ALJ speculate as to how her obesity has impaired her ability to work, and the Ruling expressly prohibits such guesswork:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment *may or may not* increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

67 Fed. Reg. at 57862. Although the better practice would have been for the ALJ to have performed this exercise, his error in failing to do so is harmless given the dearth of evidence in the record. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

E. "New" Evidence

Beginning in June 2003, Dr. Eric Cole became plaintiff's primary care physician, seeing her several times over the next several months. (See generally Tr. 174-97; see also Tr. 322-26 (indicating care at least through January 2006)). In both October 2005 and January 2006, Dr. Cole offered the opinion that plaintiff was disabled. (See Tr. 452, 453). Although these letters were apparently not before the ALJ, they were presented to the Appeals Council, which it incorporated into the record. (See Tr. 9). But in deciding not to review the ALJ's decision, the Appeals Council found only that "the additional evidence" failed to "provide a basis for changing the [ALJ]'s decision." (Tr. 6). Plaintiff contends that this failure to elaborate constitutes reversible error.

Defendant has explained, at length, that the law concerning this issue is not established at this time. Nevertheless, the undersigned is persuaded by the forceful opinion of Judge David Norton, now serving as this district's Chief Judge, in Harmon v. Apfel, 103 F. Supp. 2d 869 (D.S.C. 2000):

> In [Barden v. Apfel, No. 5:98-2637-18BD, slip op. (D.S.C. Oct. 4, 1999), and Sumpter v. Apfel, No. 5:97-2806-18JI, slip op. (D.S.C. Sept. 28, 1999)], this court relied on published decisions of the Fourth Circuit in determining that the Appeals Council must articulate its reasons for rejecting new, additional evidence, so that a reviewing court may understand the weight the Commissioner attributed to the new

17

> evidence. In Social Security cases, a district court's function "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." "A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court." Instead, the Commissioner "must indicate explicitly that all relevant evidence has been weighed and its weight." The "Appeals Council's failure to make specific findings concerning [new evidence submitted to it is] reversible error. Unless the [Commissioner] explicitly indicates the weight given to all the relevant evidence, [a district court] cannot determine on review whether the findings are supported by substantial evidence." Therefore, the Commissioner "must present [the reviewing court] with findings and determinations sufficiently articulated to permit meaningful judicial review." The Commissioner failed to do so in this case. This court is not a soothsayer and cannot base its conclusion on surmise and conjecture as to the reasons the Commissioner disregarded the new, additional evidence presented to it. "Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

Id. at 873 (footnotes and citations omitted). See also Suber v. Comm'r of Soc. Sec. Admin., 640 F. Supp. 2d 684, 688 (D.S.C. 2009) (agreeing that "the Harmon reasoning represents the most sound resolution of the Fourth Circuit's conflicting authorities"). Nevertheless, as the undersigned already sees the need for the ALJ to address other issues, upon remand, the ALJ can also subject Dr. Cole's letters to a proper treating physician evaluation. Cf. King v. Barnhart, 415 F. Supp. 2d 607, 611 (E.D.N.C. 2005) ("If, for example, the new evidence contains an opinion of a treating physician that claimant was disabled, that opinion not having been addressed or contradicted by other evidence in the record, the great weight accorded to such an opinion would require remand.").

## **CONCLUSION**

18

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 205(g), sentence four, it is,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above to determine if plaintiff is entitled to benefits from the alleged onset date of November 10, 2002.

Respectfully submitted,

January 11, 2010                          s/Thomas E. Rogers, III
                                                       Thomas E. Rogers, III
Florence, South Carolina              United States Magistrate Judge